IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RETRO TELEVISION NETWORK,　　*
INC.,　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　　Plaintiff,　　　　*
vs.　　　　　　　　　　　　　　　*　　No. 4:11-cv-00489-SWW
　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*
LUKEN COMMUNICATIONS, LLC;　　*
and RETRO TELEVISION, INC., f/k/a　*
RETRO PROGRAMING SERVICES,　　*
INC.,　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　　　　Defendants.　　　*

OPINION AND ORDER

Plaintiff Retro Television Network, Inc. brings this action against defendants

Luken Communications, LLC and Retro Television, Inc., f/k/a Retro Programing

Services, Inc., seeking an accounting under an Intellectual Property Agreement dated

December 22, 2005.  See Am. Compl. [doc.#11].  Before the Court is defendants' motion

[doc.#14] to dismiss plaintiff's amended complaint.  Plaintiff has responded in opposition

to defendants' motion and defendants have filed a reply to plaintiff's response.  For the

reasons that follow, the Court grants defendants' motion to dismiss plaintiff's amended

complaint.

I.

A.

During the 1990s Larry E. Morton formed several limited liability companies for

the purpose of purchasing and operating full power television stations, low power

television stations, and radio stations.  In June 1998, the companies were merged to form Equity Broadcasting Corporation, an Arkansas Corporation.  Henry G. Luken, III invested in Equity Broadcasting Corporation and was involved in its operations, including serving as a board member.  Henry Luken was the owner of defendant Luken Communications, LLC.

In the fall of 2005, Larry Morton and another individual, Neal Ardman, came up with a concept and business plan for a new television network to go on the digital side channels of television stations as the television industry completed the mandatory digital conversion.  The network was named Retro Television Network.  Larry Morton would later form and control plaintiff Retro Television Network, Inc., an Arkansas corporation that broadcasts syndicated programming developed in the 1960s through the 1990s and obtained from the CBS Network.

On December 22, 2005, Equity Broadcasting Corporation and plaintiff Retro Television Network, Inc. entered into an Intellectual Property Agreement (IPA) that purported to transfer to RTN Television Corporation, an Arkansas corporation and a subsidiary of Equity Broadcasting Corporation, all its rights in and to Retro Television Network, except for plaintiff Retro Television Network, Inc.'s "creative and intellectual rights."  See IPA Recital D; IPA ¶ 1.  In exchange for the transfer, plaintiff Retro Television Network, Inc. retained, *inter alia*, "the right to receive ... royalty payments representing ten (10%) of the net revenue received by [Retro Television Network] from

all sources...."  See IPA ¶ 1.[1]

Paragraph 13 of the IPA addresses the effect of the IPA on successor corporations and third party beneficiaries.  Paragraph 13 provides:

> **Benefit and Binding Effect.**  This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors, and permitted assigns.  No person or entity that is not a party to this agreement may claim any right or benefit hereunder.

On July 20th, 2006, plaintiff Retro Television Network, Inc. and Equity Broadcasting Corporation amended the IPA to reflect that "the reference to the [Equity Broadcasting Corporation] subsidiary in recital D is hereby changed from RTN Television Corporation ... to Retro Programing Services, Inc."[2]  Retro Programing Services, Inc., an Arkansas corporation, would later merge with defendant Retro Television, Inc., a Tennessee corporation.  Defendant Retro Television, Inc. was the surviving corporation of that merger.

Apparently, on April 7, 2006, Equity Broadcasting Corporation and Coconut Palm Acquisition Corporation, a Delaware corporation, agreed to a merger to form Equity Media Holdings Corporation.  The merger was approved in March 2007.  Equity Media Holdings Corporation continued the operations of Equity Broadcasting Corporation as an

---

[1] Although the parties to the IPA are Equity Broadcasting Corporation and plaintiff Retro Television Network, Inc., the IPA purports to indicate on the signature page that it was also "accepted by" Equity Broadcasting Corporation subsidiary RTN Television Corporation.  The Court notes that RTN Television Corporation did not file with the Arkansas Secretary of State until December 27, 2005.

[2] Again, although the parties to the IPA are Equity Broadcasting Corporation and plaintiff Retro Television Network, Inc., the amendment to the IPA purports to indicate that it was also "accepted by" Equity Broadcasting Corporation subsidiary RTN Television Corporation.

owner of various radio and television stations and interests.

Equity Media Holdings Corporation's financial condition deteriorated shortly after the 2007 merger, including a working capital deficit in the millions of dollars and repeated cash flow problems. During this time, Equity Media Holdings Corporation began to focus its resources on increasing Retro Television Network's affiliate penetration and maximizing profits for each of its stations.

On June 24, 2008, defendant Luken Communications, LLC, by way of Henry Luken's ownership, allegedly entered into a Stock Purchase Agreement with Equity Media Holdings Corporation in which defendant Luken Communications, LLC purchased Equity Media Holdings Corporation's interest in Retro Television Network. Equity Media Holdings Corporation allegedly sold its interest in Retro Television Network to Henry Luken and defendant Luken Communications, LLC for approximately sixteen percent of the November 2007 valuation of Retro Television Network of $115.8 million. Some five months later, Equity Media Holdings Corporation began a voluntary petition for bankruptcy protection.[3]

The following chart of the entities referenced in this Opinion and Order and the

---

[3] The allegations concerning Equity Media Holdings Corporation's financial condition following the 2007 merger and the Stock Purchase Agreement between Equity Media Holdings Corporation and Luken Communications, LLC, included herein for background purposes only, are not set forth in plaintiff Retro Television Network, Inc.'s amended complaint but are set forth in an Order issued by Chief Judge Holmes in a seemingly related case, *Rice v. Luken Communications, LLC*, No. 4:11-cv-00386-JLH, although no notice of related case has been filed (the Clerk's Office, however, has docketed *Rice v. Luken Communications* as related to this action). Yet another seemingly related case, *Rice v. Rochon*, No. 4:11-cv-00483-SWW, is assigned to this Court by random draw.

relevant dates surrounding those entities (as set forth by plaintiff Retro Television

Network, Inc. or revealed by the record) is provided for easy reference:[4]

| DATE | ENTITY/ACTION | COMMENT |
|---|---|---|
| May 29, 1998 | **Equity Broadcasting Corporation** filed with the Arkansas Secretary of State | Not a party to this action; party to the IPA |
| November 2, 2005 | **Retro Television Network, Inc.** filed with the Arkansas Secretary of State | Plaintiff to this action and party to the IPA |
| December 22, 2005 | IPA entered into between plaintiff **Retro Television Network, Inc.** and **Equity Broadcasting Corporation** | IPA purports to transfer plaintiff **Retro Television Network, Inc.'s** non-creative rights in Retro Television Network to an **Equity Broadcasting Corporation** subsidiary–**RTN Television Corporation**–that would later file with the Arkansas Secretary of State |
| December 27, 2005 | **RTN Television Corporation** filed with the Arkansas Secretary of State | Subsidiary of **Equity Broadcasting Corporation**; not a party to this action or the IPA |

---

[4] Defendants' observation that the "Retro" entities are "confusingly" named is an understatement. It is for this reason that the Court formulated the chart for easy reference.  It is also for this reason that the Court refers to all entities by their full name in this Opinion and Order.

| April 7, 2006 | **Equity Broadcasting Corporation** agreed to merger with Coconut Palm Acquisition Corporation to form **Equity Media Holdings Corporation**; approval of merger occurred in March 2007 | The surviving corporation following the merger is **Equity Media Holdings Corporation** |
|---|---|---|
| July 20, 2006 | IPA amended to change **Equity Broadcasting Corporation/Equity Media Holdings Corporation** subsidiary **RTN Television Corporation** in the IPA to **Retro Programing Services, Inc.** | **Retro Programing Services, Inc.**, subsidiary of **Equity Broadcasting Corporation/Equity Media Holdings Corporation** and defendant to this action; would later file with the Arkansas Secretary of State |
| September 26, 2006 | **Retro Programing Services, Inc.** filed with the Arkansas Secretary of State | Subsidiary of **Equity Broadcasting Corporation/Equity Media Holdings Corporation** and defendant to this action; did not exist when IPA was entered into or amended |
| April 2, 2008 | **Luken Communications, LLC** filed with the Tennessee Secretary of State | Defendant to this action; not a party to the IPA and did not exist when IPA was entered into or amended |

| June 24, 2008 | **Luken Communications, LLC** allegedly acquired **Retro Programing Services, Inc.** pursuant to a Stock Purchase Agreement with **Equity Media Holdings Corporation**, C.A.S.H. Services, Inc., and **Retro Programing Services, Inc**. | **Luken Communications, LLC** and **Retro Programing Services, Inc.** defendants to this action; not parties to the IPA and did not exist when IPA was entered into or amended |
|---|---|---|
| December 16, 2008 | **Equity Media Holdings Corporation** filed for bankruptcy | Not a party to this action or the IPA |
| June 17, 2009 | **Retro Television, Inc**. filed with the Tennessee Secretary of State | Defendant to this action; not a party to the IPA and did not exist when IPA was entered into or amended |
| December 23, 2009 | **Retro Programing Services, Inc.** merged with **Retro Television, Inc.**; **Retro Television, Inc.** became the surviving corporation. | **Retro Television, Inc.** a defendant to this action; not a party to the IPA and did not exist when IPA was entered into or amended |

B.

This action was originally filed on May 20, 2011 in the Circuit Court of Pulaski County, Arkansas but it was removed to this Court by defendants on June 16, 2011. After defendants filed a motion to dismiss the complaint, plaintiff Retro Television Network, Inc. filed its amended complaint, which provides as follows:

> 1. That Plaintiff Retro Television Network, Inc. ("RTN Team") is an Arkansas corporation that is wholly owned by Sandra Morton.

2. That Defendant Retro Television, Inc. ("Retro") is a Tennessee corporation, and was F/K/A Retro Programming Services, Inc. ("RPS").

3. That Defendant Luken Communications, LLC ("Luken") is a Tennessee limited liability company.

4. That the Agreement in this case was executed in the State of Arkansas, by parties that at the time of such execution were all Arkansas companies.

5. That jurisdiction herein is based upon diversity.

6. That on or about December 22, 2005, RTN Team entered into an Intellectual Property Agreement with Equity Broadcasting Corporation ("EBC"); that a copy of such Agreement is attached to Plaintiffs' original Complaint and is adopted and incorporated herein.

7. That pursuant to such Agreement, the RTN Team created the Retro Television Network ("RTN") and agreed to transfer all RTN rights other than the creative rights to a subsidiary corporation of EBC, to wit, RTN Television Corporation ("RTC").

8. That in exchange for such transfer, the RTN Team shall receive a royalty payment of ten percent (10 %) of the net revenue for RTN, which is currently being operated by Defendant Retro and owned by Defendant Luken.

9. That on or about July 20, 2006, the Parties referred to hereinabove in paragraph 6 executed an amendment to such Agreement: " . . . that the reference to the EBC subsidiary company in recital D is hereby changed from RTN Television Corporation ("RTC") to Retro Programming Services, Inc. ("RPS") . . . ."; that a copy is attached to Plaintiffs' original Complaint and is adopted and incorporated herein.

10. That Defendant Luken acquired RPS, including its assets and liabilities.

11. That Defendant Retro is a party and a third party beneficiary to the aforementioned 2005 Agreement.

12. That Defendants have failed and/or refused to pay any such

royalty fees to Plaintiff.

13. That Plaintiff should be entitled to an accounting of all funds received related to RTN.

14. That Defendants are indebted to Plaintiff in a sum that exceeds $75,000.00.

15. That Defendants are jointly and severally liable to Plaintiff.

WHEREFORE, Plaintiff prays for an accounting in regard to all income received by Defendant Retro and for payment of past, present, and future royalty fees for which Defendants should be held jointly and severally liable, plus pre-judgment and post judgment interest, court costs, and a reasonable attorney's fee.[5]

## II.

Defendants argue that the sole claim in plaintiff Retro Television Network, Inc.'s amended complaint is based on an alleged contract–the IPA–to which neither of the defendants is a party. Defendants argue that as a matter of law, they have no obligation under the contract to which they are not parties, and the language of the contract confirms that principle. Defendants argue that the amended complaint thus fails to state a claim to relief that is plausible on its face and the Court should dismiss it under Fed.R.Civ.P. 12(b)(6).

---

[5] Plaintiff Retro Television Network, Inc.'s original complaint asserted ten counts and included 555 pages of exhibits. However, as "[i]t is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect," *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005), the amended complaint, which seeks only an accounting and incorporates by reference only the IPA and its amendment, is now the sole basis of this action. Parties to the original complaint also included Larry Morton and Henry Luken. These parties were dismissed from this action without objection by Order entered August 5, 2011 [doc.#17]. In accordance with the parties' request, the style of the case was changed as set forth above.

A.

In reviewing a motion to dismiss, the Court must accept as true all factual allegations in the complaint, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* 556 U.S. 662, 129 S.Ct. at 1949. "Nor does a complaint suffice if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). A well-pleaded complaint may proceed even if it appears that actual proof of those facts is improbable and that recovery is very remote and unlikely. *Twombly*, 550 U.S. at 556. A complaint cannot, however, simply leave open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery. *Id.* at 561. Rather, the facts set forth in the complaint must be sufficient to nudge the claims across the line from conceivable to plausible. *Id.* at 570. "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1950

(quoting Fed.R.Civ.P. 8(a)(2)).[6]

B.

It is undisputed that neither defendant and neither entity which plaintiff Retro

Television Network, Inc. argues is a third party beneficiary of the IPA was even in

existence when the IPA was entered into in 2005.  Rather, plaintiff Retro Television

Network, Inc. argues that "through one or more mergers, an amendment to the IPA,

and/or a stock purchase agreement, defendants became responsible under the IPA."[7]

Plaintiff Retro Television Network, Inc. states as follows:

that pursuant to the IPA, plaintiff Retro Television Network, Inc. created

---

[6] Generally, consideration on a motion under Rule 12(b)(6) is limited to initial pleadings, and if the court considers matters outside the pleadings, the motion must be treated as one for summary judgment under Rule 56.  *Van Zee v. Hanson*, 630 F.3d 1126, 1128-29 (8th Cir. 2011).  Here, the Court is considering the IPA and an amendment thereto, which are attached to the original complaint and incorporated into the amended complaint by reference, and uncontroverted Arkansas and Tennessee Secretary of State public records, which are attached to defendants' motion to dismiss amended complaint.  See *Noble Systems Corp. v. Alorica Central, LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (court may consider some public records, materials list that do not contradict the complaint, or materials that are necessarily embraced by the pleadings when ruling on a motion to dismiss under Rules 12(b)(6) or 12(c)).  Accordingly, the Court is not required to treat defendants' motion to dismiss as one for summary judgment.

[7] "The Supreme Court of Arkansas has condemned the construction 'and/or' saying that it is 'at best ... equivocal, obscure, and meaningless, at worst slovenly, improper and a linguistic abomination.'"  *Rice v. Luken Communications, LLC*, No. 4:11-cv-00386-JLH (E.D.Ark. June 24, 2011) (quoting *Kennedy v. Papp*, 294 Ark. 88, 92, 741 S.W.2d 625, 628 (1987); *Boren v. Qualls*, 284 Ark. 65, 68, 680 S.W.2d 82, 83 (1984)).  See also *Moran v. Shern*, 60 Wis.2d 39, 47 n.4, 208 N.W.2d 348, 351, 352 (Wis. 1973) (characterizing the construction "and/or" as "'that befuddling, nameless thing, that Janus-faced verbal monstrosity, neither word nor phrase ... now commonly used by lawyers in drafting legal documents, through carelessness or ignorance or as a cunning device to conceal rather than express meaning with a view to furthering the interests of their clients'") (quoting *Employers' Mut. Liability Ins. Co. v. Tollefsen*, 219 Wis. 434, 437, 438, 263 N.W. 376, 377 (1935)).

the Retro Television Network and agreed to transfer all Retro Television Network rights other than the creative rights to RTN Television Corporation, a subsidiary corporation of Equity Broadcasting Corporation;

that although not identified as one of the parties to the IPA, RTN Television Corporation acquired the non-creative rights that plaintiff Retro Television Network, Inc. had in the Retro Television Network concept and programing model and therefore received the benefits, and as such became a third party beneficiary of the IPA;

that following the merger between Equity Broadcasting Corporation and Coconut Palm Acquisition Corporation to form Equity Media Holdings Corporation, the successor corporation, Equity Media Holdings Corporation became the party responsible for all obligations under the IPA, including the royalty payment of 10% of the net revenue to plaintiff Retro Television Network, Inc.;

that pursuant to the July 2006 amendment to the IPA, RTN Television Corporation changed to Retro Programing Services, Inc. and the parties clearly intended for Retro Programing Services, Inc. to become the third party beneficiary of the IPA and to receive all non-creative rights of plaintiff Retro Television Network, Inc. in the Retro Television Network;

that on June 24, 2008, defendant Luken Communications, LLC acquired Retro Programing Services, Inc. pursuant to a Stock Purchase Agreement with Equity Media Holdings Corporation, C.A.S.H. Services, Inc. and Retro Programing Services, Inc. and Luken Communications, LLC thereby stepped into the shoes of Retro Programing Services, Inc. and became a third party beneficiary of the IPA and responsible for its debts and liabilities, including the 10% royalty of the net revenue to plaintiff Retro Television Network, Inc.;

that although the June 24, 2008 Stock Purchase Agreement states that it supercedes the entirety of the IPA, plaintiff Retro Television Network, Inc. was not a party to the Stock Purchase Agreement and such agreement does not and cannot terminate the IPA;

that on June 17, 2009, defendant Retro Television, Inc. filed with the Tennessee Secretary of State following which Retro Programing Services, Inc., on December 23, 2009, merged with defendant Retro Television, Inc., with defendant Retro Television, Inc. becoming the surviving corporation;

that since defendant Retro Television, Inc. was the surviving corporation, it
acquired plaintiff Retro Television Network, Inc.'s rights to Retro
Television Network under the IPA, and defendant Retro Television, Inc.
also became a third party beneficiary and as a result has an obligation to pay
the 10% royalty to plaintiff Retro Television Network, Inc.

Plaintiff Retro Television Network, Inc. goes on to argue that if the Court

determines that the June 24, 2008 Stock Purchase Agreement controls, then defendants

Retro Television, Inc. and Luken Communications, LLC breached the subsequent

agreements (the "Transaction Documents"), which are referred to in such Agreement(s),

and as set out in the original complaint (¶¶ 58 *et seq*.), which plaintiff Retro Television

Network, Inc. states is incorporated in its response to defendants' motion to dismiss by

reference.  In that the 2008 Agreement(s) were breached by defendants, argues plaintiff

Retro Television Network, Inc., the parties' contractual relationship would therefore

revert in any event to the IPA.  Alternatively, plaintiff Retro Television Network, Inc.

requests that this action be stayed and removed to arbitration pursuant to paragraph 7.b. of

the IPA.

## 1.

The Court first addresses plaintiff Retro Television Network, Inc.'s argument that

since defendant Retro Television, Inc. was the surviving corporation following the merger

with Retro Programing Services, Inc. (which itself had changed from RTN Television

Corporation following the July 2006 amendment to the IPA), it acquired plaintiff Retro

Television Network, Inc.'s non-creative rights to Retro Television Network under the

IPA, and defendant Retro Television, Inc. also became a third party beneficiary and as a

result has an obligation to pay the 10% royalty to plaintiff Retro Television Network, Inc.

Under Arkansas law, a contract is actionable by a third party when there is substantial evidence of a clear intention to benefit that third party. *Simmons Foods, Inc. v. H. Mahmood J. Al-Bunnia & Sons Co.*, 634 F.3d 466, 469-470 (8th Cir. 2011) (internal quotation marks and citation omitted). The presumption is that parties contract only for themselves and a contract will not be construed as having been made for the benefit of a third party unless it clearly appears that such was the intention of the parties. *Id.* at 470.[8]

Plaintiff Retro Television Network, Inc. acknowledges that neither of the defendants and no predecessor of either defendant is a party to the IPA, and the Court finds that the IPA does not meet the standard for making defendant Retro Television, Inc. or any predecessor a third party beneficiary. Rather, the IPA expressly rules out that possibility, stating in paragraph 13 that "[n]o person or entity that is not a party to this agreement may claim any right or benefit hereunder." The IPA unambiguously precludes the Equity Broadcasting Corporation/Equity Media Holdings Corporation subsidiary, which plaintiff argues is a third party beneficiary, from claiming any right or benefit under the IPA.[9] Indeed, plaintiff Retro Television Network, Inc. acknowledges that at the time of the merger between Equity Broadcasting Corporation and Coconut Palm

---

[8] Paragraph 8 of the IPA provides that the IPA "shall be construed and governed in accordance with the laws of Arkansas...."

[9] The court ascertains the plain and ordinary meaning of a contract, and when a contract is unambiguous, the court determines its meaning as a matter of law. *Southern Implement Co., Inc. v. Deere & Co.*, 122 F.3d 503, 506-07 (8th Cir. 1997) (citation omitted).

Acquisition Corporation to form Equity Media Holdings Corporation, Equity Media

Holdings Corporation "became the party responsible for any and all obligations under the

IPA, including but not limited to, the royalty payment of ten percent (10%) of the net

revenue to Plaintiff [Retro Television Network, Inc.] for the transfer of its rights, other

than creative rights, in and to Retro Television Network to RTN Television Corporation."

Equity Media Holdings Corporation, however, is not a party to this action (presumably

because it is in bankruptcy) and plaintiff Retro Television Network, Inc. cites no authority

for the proposition that an Equity Broadcasting Corporation/Equity Media Holdings

Corporation subsidiary was a third party beneficiary of the IPA.  As noted by defendants,

this conclusion is bolstered by a reading of the complete IPA, which makes clear that any

transfer was to be for the benefit of Equity Broadcasting Corporation, the actual party to

the IPA, and not for the benefit of any subsidiary, and that Equity Broadcasting

Corporation was to provide all of the consideration for any such transfer and to be the

only obligor for such consideration.[10]

─────────────────────

[10] The IPA is titled "EBC-RTN Intellectual Property Agreement" and the introductory paragraph
to the IPA provides that "[t]his intellectual Property Agreement is made this 22nd day of December 2005,
by and among [plaintiff] Retro Television Network, Inc. ... and Equity Broadcasting Corporation ...,
collectively know[n] as 'the Parties.'" The recitals to the IPA likewise make clear that Equity
Broadcasting Corporation is the party which contracted with plaintiff Retro Television Network, Inc. See
Recitals B ("allow [Equity Broadcasting Corporation] to pursue the development of a national broadcast
network in exchange for certain royalty rights") and C ("[Equity Broadcasting Corporation] desires to
acquire RTN").  Plaintiff Retro Television Network, Inc. notes that paragraph 13 of the IPA also provides
that "[t]his agreement shall be binding upon and inure to the benefit of the parties hereto and their
respective heirs, successors, and permitted assigns" but the covenants of the IPA confirm that plaintiff
Retro Television Network, Inc. and Equity Broadcasting Corporation are the only ones which have
obligations under the IPA.  For example, paragraphs 1(b) and (c) refer to certain things being "jointly
agreed upon by [Equity Broadcasting Corporation] and [plaintiff Retro Television Network, Inc.]" and to
"all expenses advanced by [Equity Broadcasting Corporation]" and provide that "[Equity Broadcasting

As further noted by defendants, the fact that Equity Broadcasting Corporation was able to substitute one fungible subsidiary for another in the amendment to the IPA makes clear that the IPA was for the benefit of Equity Broadcasting Corporation rather than for any particular subsidiary.  Thus, it is clear, not only from the express identification of the parties in the IPA but also from a reading of the IPA as a whole, that there are only two parties to the alleged contract on which plaintiff Retro Television Network, Inc. is suing and that defendant Retro Television, Inc. is not one of them.  Accordingly, plaintiff Retro Television Network, Inc. fails to plead enough facts against defendant Retro Television, Inc. to state a claim to relief that is plausible on its face.

Even were defendant Retro Television, Inc. a third party beneficiary under the IPA, the IPA does not impose any obligations upon it and plaintiff Retro Television Network, Inc. provides no basis for concluding that the subsidiary became responsible for Equity Broadcasting Corporation's obligations under the IPA simply by virtue of its status as a third party beneficiary.  Accordingly, plaintiff Retro Television Network, Inc. would still fail to plead enough facts against defendant Retro Television, Inc. to state a claim to relief that is plausible on its face.

---

Corporation] will be responsible for all expenses relating to the development of the RTN Broadcast network."  Paragraph 2 permits an audit of books and accounts "maintained by [Equity Broadcasting Corporation]."  *Id.*  Paragraph 3 makes clear that Equity Broadcasting Corporation is the obligor to plaintiff Retro Television Network, Inc., permitting Equity Broadcasting Corporation to assign the agreement "as long as [Equity Broadcasting Corporation] guarantees the performance of this Agreement in writing."  *Id.*  Paragraph 7(b) concerns disputes between plaintiff Retro Television Network, Inc. and Equity Broadcasting Corporation and an assessment of costs and expenses between plaintiff Retro Television Network, Inc. and Equity Broadcasting Corporation.  Paragraph 7(d) provides that "[i]n no event shall either [plaintiff Retro Television Network, Inc.] or [Equity Broadcasting Corporation] be liable" for certain kinds of damages.  *Id.*

2.

Plaintiff Retro Television Network, Inc.'s argument that defendant Luken Communications, LLC is liable for any obligations of defendant Retro Television, Inc. because it owns the stock of defendant Retro Television, Inc. is likewise without merit. In its amended complaint, plaintiff alleges only that defendant Luken Communications, LLC "acquired" Retro Programming Services, Inc. "including its assets and liabilities." Am. Compl. ¶ 10. In its brief in response to defendants' motion to dismiss, plaintiff Retro Television Network, Inc. argues that defendant Luken Communications, LLC acquired Retro Programing Services, Inc. pursuant to the June 24, 2008 Stock Purchase Agreement. Plaintiff Retro Television Network, Inc. notes that the Stock Purchase Agreement states that it supercedes the entirety of the IPA but argues that since it did not sign the Stock Purchase Agreement, it does not and cannot terminate the IPA and its amendment. Plaintiff Retro Television Network, Inc. argues, however, that "[i]n a stock purchase agreement, the purchaser acquires the debts and liabilities of the company the purchaser is acquiring" and "steps into the shoes of the seller(s)," and that pursuant to the same June 24, 2008 Stock Purchase Agreement that purports to supercede the IPA and its amendment (but does not do so according to plaintiff Retro Television Network, Inc.), defendant Luken Communications, LLC "stepped into the shoes" of Retro Programing Services, Inc. (which later became defendant Retro Television, Inc.) and thereby "became a third party beneficiary to the IPA, and is therefore responsible for its debts and liabilities, including paying the 10% royalty of the net revenue to plaintiff Retro

Television Network, Inc. as a result of the transfer of non-creative rights to Retro Programing Services, Inc. under the July 2006 amendment to the IPA.

Plaintiff Retro Television Network, Inc. does not attach a copy of the June 24, 2008 Stock Purchase Agreement to its amended complaint or otherwise specifically refer to it in that document, and it cannot be said that the Stock Purchase Agreement constitutes "some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings" such that the Stock Purchase Agreement may be considered when ruling on a motion to dismiss under Rule 12(b)(6).  See *Alorica Central*, 543 F.3d at 982.  Accordingly, the Court may not consider the Stock Purchase Agreement in ruling on defendants' motion to dismiss.

Even were the Stock Purchase Agreement properly before the Court, plaintiff Retro Television Network, Inc. cites no authority for the general proposition that "[i]n a stock purchase agreement, the purchaser acquires the debts and liabilities of the company the purchaser is acquiring" and "steps into the shoes of the seller(s)."  Rather, under Arkansas law, a shareholder is not liable for the liabilities of a corporation in which the shareholder owns stock.  See Ark. Code Ann. § 4-27-622(b) ("Unless otherwise provided in the articles of incorporation, a shareholder of a corporation is not personally liable for the acts or debts of the corporation except that he may become personally liable by reason of his own acts or conduct"); *Scott v. Central Arkansas Nursing Centers, Inc.*, 101 Ark. App. 424, 435, 278 S.W.3d 587, 595 (2008) (noting that shareholders are not ordinarily liable for the acts of their corporation or LLC) (citing Ark. Code Ann. § 4-27-622(b)).

While parties to a given stock purchase agreement may certainly provide in their agreement that the purchaser of a company is acquiring its debts and liabilities, plaintiff Retro Television Network, Inc. does not discuss or cite to any of the Stock Purchase Agreement's provisions allegedly at issue in this action (either in its amended complaint or response to defendants' motion to dismiss) concerning the terms under which the purchaser may have assumed the seller's preexisting debts or liabilities.  Accordingly, there is no basis for any such construction of the Stock Purchase Agreement that plaintiff Retro Television Network, Inc. states is at issue in this action (but does not, according to plaintiff Retro Television Network, Inc, supercede the IPA and its amendment).  As plaintiff Retro Television Network, Inc. does not allege any facts which would make defendant Luken Communications, LLC responsible for the liabilities of Retro Programming Services, Inc. or defendant Retro Television, Inc., plaintiff Retro Television Network, Inc. fails to plead enough facts against defendant Luken Communications, LLC to state a claim to relief that is plausible on its face.

3.

As an alternative to dismissal, plaintiff Retro Television Network, Inc. requests that this action be "stayed and removed to arbitration" pursuant to paragraph 7(b) of the IPA.  The Court rejects this request as plaintiff Retro Television Network, Inc. and Equity Broadcasting Corporation are the only two parties to the IPA and the arbitration provision in the IPA applies only to disputes between plaintiff Retro Television Network, Inc. and Equity Broadcasting Corporation.  IPA ¶ 7(b).

Even were defendants Retro Television, Inc. and Luken Communications, LLC

parties to the IPA and subject to its arbitration provision, a right to compel arbitration

may be waived by filing a complaint in court and engaging in litigation. *Erdman Co. v.

Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1118 (8th Cir. 2011). The Eighth

Circuit applies a uniform three-factor test in determining whether a party has waived its

right to arbitration, finding waiver when the party seeking arbitration (1) knew of its

existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the

other party by its inconsistent actions. *Id*. at 1117 (citation and internal quotation marks

omitted).

In this case, plaintiff Retro Television Network, Inc. filed an 18-page, 10-count

complaint against defendants Retro Television, Inc. and Luken Communications, LLC

and another individual. After defendants moved to dismiss that complaint, plaintiff Retro

Television Network, Inc. filed the amended complaint now at issue against these two

defendants. In the face of a motion to dismiss the amended complaint, plaintiff Retro

Television Network, Inc. argues against dismissal of the amended complaint. Plaintiff

Retro Television Network, Inc. obviously knew of the existence of the right to

arbitration–specifically invoking the arbitration provision in the IPA in its response to

defendants' motion to dismiss–and yet has acted inconsistently with that right by

instituting this litigation and arguing against the dismissal of this action, forcing

defendants to expend time and effort defending against the allegations of this action. By

doing so, plaintiff Retro Television Network, Inc. has waived any right to compel

arbitration.  See *id.* at 1118.

III.

For the foregoing reasons, the Court grants defendants' motion to dismiss plaintiff Retro Television Network, Inc.'s amended complaint.  Judgment will be entered accordingly.

IT IS SO ORDERED this 5th day of January 2012.


/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE